IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ALFREDO WISE and MICAH CANNADY, | § | |
| On Behalf of Themselves and all Others | § | |
| Similarly Situated, | § | |
| | § | |
|     Plaintiffs, | § | |
| | § | CIVIL ACTION NO. 5:15-cv-973 |
| V. | § | |
| | § | COLLECTIVE AND CLASS ACTION |
| EOG RESOURCES, INC. (f/k/a ENRON OIL | § | |
| AND GAS COMPANY), and ENERSAFE, | § | |
| INC. (a/k/a TCSAFETY and TCSAFETY, INC. | § | |
| & f/k/a ENERSAFE, LLC) | § | |
| | § | |
|     Defendants | § | |

## PLAINTIFFS' COMPLAINT FOR DAMAGES

    Plaintiffs, Alfredo Wise ("Wise") and Micah Cannady ("Cannady") (collectively "Plaintiffs"), file this Complaint against EOG Resources, Inc. (f/k/a Enron Oil and Gas Company) ("EOG") and EnerSafe, Inc. (a/k/a TCSafety and TCSafety Inc. & f/k/a EnerSafe, LLC) ("EnerSafe") (EOG and EnerSafe are collectively referred to as "Defendants" herein), showing in support as follows:

## I.     <u>SUMMARY</u>

    1.     Plaintiffs have worked for Defendants[1] during the past three years where they and many other workers are/were misclassified by Defendants as so-called independent contractors. As a result, Plaintiffs and the other misclassified workers do not/did not enjoy and receive the benefits of employment, such as overtime wages, health insurance benefits, and retirement benefits.

---

[1] As explained in more detail below, Plaintiffs' work for EnerSafe began in approximately January 2014 when EnerSafe, Inc. and TCSafety, Inc. merged. Plaintiffs worked for TCSafety, Inc. prior to that merger.

2.      Plaintiffs and the other similarly situated misclassified independent contractors work/worked in the South Texas area of operations of EOG, primarily in and around the Eagle Ford Shale. Their job duties consist/consisted of working as safety technicians and/or safety advisors in oilfield operations.

3.      Plaintiffs and the other similarly situated misclassified independent contractors work/worked exclusively for EOG in connection with EOG's South Texas/Eagle Ford Shale operations, are/were managed by EOG employees, and EOG provides/provided them with material supplies and equipment needed to do their jobs. However, Plaintiffs and the other similarly situated misclassified independent contractors are/were paid through a another company known as EnerSafe that listed them as independent contractors and issued them annual Internal Revenue Service ("IRS") Form 1099s. Although Plaintiffs and the other similarly situated misclassified independent contractors turn/turned in invoices to EOG managers, EnerSafe is and was the entity that issues/issued paychecks and annual 1099s to Plaintiffs and the other similarly situated misclassified independent contractors.

4.      Plaintiffs and the other similarly situated misclassified independent contractors are/were paid on a day rate basis until approximately late October 2015 when they were converted to hourly pay. At times, Plaintiffs and the other similarly situated misclassified independent contractors are/were also paid a so-called per diem that is not/was not reasonably approximated to reimbursable expenses incurred by Plaintiffs and the other similarly situated misclassified independent contractors on behalf of EOG and/or EnerSafe.

5.      Plaintiffs and the other similarly situated misclassified independent contractors regularly work/worked in excess of 40 hours during their workweeks performing work for EOG

and/or EnerSafe, but are not/were not paid time and one-half their respective regular rates of pay for all hours worked over 40 for each such workweek by EOG and/or EnerSafe.

6.     Plaintiffs seek to recover unpaid overtime wages and all available damages under the federal Fair Labor Standards Act, 29 U.S.C. §§ 201-219, and the federal Portal-to-Portal Pay Act, 29 U.S.C. §§ 251-262, (collectively "FLSA") for EOG's and/or EnerSafe's failure to pay Plaintiffs time and one-half their respective regular rates of pay for all hours worked over 40 during each seven day workweek for the time period of three years preceding the date this lawsuit was filed and forward.

7.     Plaintiffs file their FLSA cause of action individually and on behalf of all others similarly situated as a FLSA collective action pursuant to 29 U.S.C. § 216(b).

8.     Plaintiffs, on behalf of themselves and all others similarly situated, allege that they are/were misclassified as independent contractors by EOG and/or EnerSafe, and are/were instead employees of EOG and/or EnerSafe under the FLSA's economic realities test.

9.     Plaintiffs, on behalf of themselves and all others similarly situated, allege that EOG and EnerSafe are joint employers and are jointly and severally liable for their FLSA damages.

10.     Plaintiffs also seek to recover benefits covered by/subject to the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001, *et seq.* ("ERISA") that they do not/did not receive/enjoy as a result of their misclassification by EOG and/or EnerSafe as independent contractors. On information and belief, Plaintiffs were beneficiaries of EOG's and/or EnerSafe's ERISA covered employee benefits plan(s), but were not provided with all benefits offered, provided, or covered by each such plan.

11.     Plaintiffs file their ERISA cause of action individually and as the representatives of the putative class members pursuant to Federal Rule of Civil Procedure 23.

## II.     THE PARTIES, JURISDICTION, AND VENUE

### A.     PLAINTIFF ALFREDO WISE

12.     Wise is a natural person who resides in Jourdanton, Texas. He has standing to file this lawsuit.

13.     Although Wise is and was labeled as a so-called independent contractor by EOG and/or EnerSafe, the economic reality is that, at all times relevant, he was an "employee" of EOG and/or EnerSafe as that term is defined by the FLSA. 29 U.S.C. § 203 (e)(1). *See also, Hopkins v. Cornerstone Am.*, 545 F.3d 338, 343 (5th Cir. 2008). EOG and EnerSafe are and were joint employers of Wise.

14.     Similarly, under the common-law test for employee status in connection with ERISA, Wise was, at all relevant times, an employee of EOG and/or EnerSafe. *See Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323, 112 S. Ct. 1344, 1348, 117 L. Ed. 2d 581 (U.S. 1992); *Landry v. Georgia Gulf Corp.*, 91 F. App'x 950, 952 (5th Cir. 2004).

15.     Furthermore, on information and belief, Wise, as a misclassified independent contractor/*de facto* employee, was a beneficiary as defined/covered by EOG's and/or EnerSafe's ERISA covered employee benefit plan(s).

### B.     PLAINTIFF MICAH CANNADY

16.     Cannady is a natural person who resides in La Vernia, Texas. He has standing to file this lawsuit.

17.     Although Cannady is and was labeled as a so-called independent contractor by EOG and/or EnerSafe, the economic reality is that, at all times relevant, he was an "employee"

of EOG and/or EnerSafe as that term is defined by the FLSA. 29 U.S.C. § 203 (e)(1). *See also,*
*Hopkins*, 545 F.3d at 343. EOG and EnerSafe are and were joint employers of Cannady.

18.     Similarly, under the common-law test for employee status in connection with
ERISA, Cannady was, at all relevant times, an employee of EOG and/or EnerSafe. *See*
*Nationwide Mut. Ins. Co.*, 503 U.S. at 323; *Landry*, 91 F. App'x at 952.

19.     Furthermore, on information and belief, Cannady, as a misclassified independent
contractor/*de facto* employee, was a beneficiary as defined/covered by EOG's and/or EnerSafe's
ERISA covered employee benefit plan(s).

### C.     **FLSA COLLECTIVE ACTION MEMBERS**

20.     The FLSA opt-in Plaintiffs and putative collective action members are all current
and/or former misclassified independent contractors similarly situated to Plaintiffs who: (a)
work/worked exclusively for EOG in connection with EOG's South Texas/Eagle Ford Shale
Operations, but are/were issued paychecks and 1099s from EnerSafe and/or its predecessor; (b)
are/were paid on a day rate basis; (c) are/were, at times, paid a per diem in addition to the day
rate; (d) had/have job duties/titles of safety technicians and/or safety advisors; (e) work/worked
more than 40 hours in any workweek; and (f) are/were not paid time and one-half their regular
rate of pay for all hours worked over 40 in each such workweek by EOG and/or EnerSafe.

21.     The FLSA collective action class does not include workers paid by EnerSafe
pursuant to W-2s.

22.     All of the FLSA opt-in Plaintiffs and putative collective action members are
similarly situated to Plaintiffs, and to one another, within the meaning of Section 216(b) of the
FLSA.

D. **ERISA RULE 23 CLASS MEMBERS**

23.     The ERISA Class Members are similarly situated workers to Plaintiffs who are/were misclassified as independent contractors by EOG and/or EnerSafe under the controlling legal standards, are/were beneficiaries under EOG's and/or EnerSafe's ERISA covered employee benefit plan(s), and are not/were not provided with the benefits of  EOG's and/or EnerSafe's ERISA covered employee benefits plan(s).

24.     Plaintiffs seek to represent a class initially defined as: "All of EOG's and/or EnerSafe's workers misclassified as independent contractors that are and/or were beneficiaries under EOG's and/or EnerSafe's ERISA covered employee benefits plan(s) who are not and/or were not provided with the benefits of EOG's and/or EnerSafe's ERISA covered employee benefits plan(s)." Plaintiffs request the opportunity to expand, narrow or modify the class definition, including sub-classes, pursuant to a motion for class certification and/or amended complaint.

E. **DEFENDANT EOG RESOURCES, INC. (f/k/a ENRON OIL AND GAS COMPANY)**

25.     On information and belief, Defendant is a corporation incorporated under the laws of the State of Delaware.

26.     During all times relevant to this lawsuit, Defendant has done business in the State of Texas. Furthermore, Defendant employed and continues to employ Plaintiffs and employees in Texas.

27.     Defendant's principal office and principal place of business is located at 1111 Bagby Street, Sky Lobby 2, Houston, Texas 77002.

28.     During the time period relevant to the FLSA cause of action set forth in this lawsuit, EOG is and was an "employer" of Plaintiffs and the putative collective action members pursuant to the FLSA.

29.     During the time period relevant to the ERISA cause of action set forth in this lawsuit, EOG was an "employer" of Plaintiffs and the putative class members pursuant to the common-law employee test utilized by the Supreme Court and the United States Court of Appeals for the Fifth Circuit in ERISA cases.

30.     At all times relevant to this lawsuit, EOG is and has been an "enterprise engaged in commerce" as defined by the FLSA.

31.     At all times relevant to this lawsuit, EOG employed, and continues to employ, two or more employees who engaged in commerce. For example, EOG has, at all relevant times, had two or more employees engaged in interstate oil and natural gas exploration and production services.

32.     At all times relevant to this lawsuit, EOG employed two or more employees who regularly handled and/or worked on goods and/or materials in their daily work that were moved in and/or produced for commerce by other people. Examples of such goods and/or materials include computers, computer related equipment, communication devices, and safety equipment used in connection with EOG's oil and natural gas exploration and production operations.

33.     On information and belief, at all times relevant to this lawsuit, EOG has had annual gross sales or business volume in excess of $500,000.

34.     EOG may be served with summons by serving its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

F.   **ENERSAFE, INC. (a/k/a TCSAFETY AND TCSAFETY INC. & f/k/a ENERSAFE, LLC)**

35.     On information and belief, EnerSafe is a corporation incorporated under the laws of the State of Texas.

36.     During all times relevant to this lawsuit, EnerSafe has done business in the State of Texas. Furthermore, EnerSafe employed and continues to employ Plaintiffs and employees in Texas.

37.     On November 1, 2013, or about EnerSafe, LLC converted to EnerSafe, Inc.

38.     On or about January 21, 2014, EnerSafe, Inc. and TCSafety, Inc. merged with EnerSafe being the existing and surviving company.

39.     EnerSafe identifies TCSafety, Inc. and TCSafety as assumed business names of EnerSafe.

40.     EnerSafe's principal office and principal place of business is located at 7700 San Felipe, Suite 490, Houston, Texas 77063.

41.     During the time period relevant to the FLSA cause of action set forth in this lawsuit, EnerSafe is and was an "employer" of Plaintiffs and the putative collective action members pursuant to the FLSA.

42.     During the time period relevant to the ERISA cause of action set forth in this lawsuit, EnerSafe was an "employer" of Plaintiffs and the putative class members pursuant to the common-law employee test utilized by the Supreme Court and the United States Court of Appeals for the Fifth Circuit in ERISA cases.

43.     At all times relevant to this lawsuit, EnerSafe is and has been an "enterprise engaged in commerce" as defined by the FLSA.

44.     At all times relevant to this lawsuit, EnerSafe employed, and continues to employ, two or more employees who engaged in commerce. For example, EnerSafe has, at all relevant times, had two or more employees engaged in work for other companies who perform interstate oil and natural gas exploration and production services.

45.     At all times relevant to this lawsuit, EnerSafe employed two or more employees who regularly handled and/or worked on goods and/or materials in their daily work that were moved in and/or produced for commerce by other people. Examples of such goods and/or materials include office equipment, such as computers, computer related equipment, and communication devices. Other examples include a wide variety of safety related products, such as hydrogen sulfide gas monitors, gloves, clothing and personal protection equipment, which EnerSafe makes available for purchase to customers and which are handled, sold and shipped, including shipping to location in Texas and states other than Texas, by employees of EnerSafe.

46.     On information and belief, at all times relevant to this lawsuit, EnerSafe has had annual gross sales or business volume in excess of $500,000.

47.     EnerSafe may be served with summons by serving its registered agent, Corporation Service Company d/b/a CSC - Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620,  Austin, TX 78701-3218.

**G.     <u>JURISDICTION AND VENUE</u>**

48.     The Court has personal jurisdiction over Defendants based on both general and specific jurisdiction.

49.     During all times relevant to this lawsuit, Defendants have done business in the State of Texas and continue to do business in the State of Texas.

50.     The Court has subject matter jurisdiction over this case based on federal question jurisdiction, 28 U.S.C. § 1331, because Plaintiffs base their claims on federal law, namely the FLSA and ERISA.

51.     Venue is proper in the United States District Court for the Western District of Texas because a substantial part of the events giving rise to Plaintiffs' claims occurred, and continue to occur, in this judicial district. Furthermore, EOG maintains a place of business/yard in this judicial district where Plaintiffs and the FLSA Collective Action and ERISA Rule 23 Class Members performed work.

52.     Venue is proper in the San Antonio Division of the United States District Court for the Western District of Texas because EOG maintains business operations in the San Antonio Division and a substantial part of the events giving rise to Plaintiffs' claims occurred, and continue to occur, in the San Antonio Division.

### III.     FACTUAL BACKGROUND

53.     Plaintiffs incorporate the preceding paragraphs by reference as if set forth fully in this section.

54.     EOG is one of the largest oil and natural gas companies in the United States and has business operations in Texas and states other than Texas. EOG has significant operations in the Eagle Ford Shale area of South Texas.

55.     EnerSafe is company that provides a wide-variety of safety related products and services. Examples of products sold by EnerSafe include items such as hydrogen sulfide gas monitors, gloves, clothing and personal protection equipment which EnerSafe makes available for purchase to customers. EnerSafe also provides safety training to its customers. EnerSafe also has employees who perform safety testing, primarily in connection with hydrogen sulfide, also

known as "H2S" or "poison gas" in the oil and gas industry. EnerSafe provides so-called consultants to its customers in a wide range of oil and gas exploration and production operations, including safety testing. Finally, EnerSafe acts as a conduit of payment for work performed by Plaintiffs and other similarly situated misclassified independent contractors for EOG.

56.     Although Plaintiffs never signed an independent contractor agreement with EOG and/or EnerSafe, at all times material to this lawsuit they have been treated as independent contractors by Defendants by being issued 1099s as opposed to W-2s for annual work, not being paid overtime wages for hours worked over 40 in a workweek until a recent change in that policy in late October 2015, and had no deductions made from their paychecks pursuant to the Federal Insurance Contributions Act ("FICA").

57.     The work performed by Plaintiffs and the similarly situated misclassified independent contractors benefited EOG and EnerSafe at the same time. For example, EOG enjoyed the labor of Plaintiffs and the similarly situated misclassified independent contractors while EnerSafe, on information and belief, received compensation from EOG in return for providing Plaintiffs and the other misclassified independent contractors as workers for EOG. Similarly, Defendants benefitted financially from their scheme/pan/practice/policy to list Plaintiffs and similarly situated workers as independent contractors therefore dodging overtime pay, FICA taxes, state unemployment taxes, and other costs associated with workers labeled as "employees."

58.     Plaintiffs and the other similarly situated misclassified independent contractors work/worked in the South Texas area of operations of EOG, primarily in and around the Eagle Ford Shale. Their job duties consist/consisted of working as safety technicians and/or safety advisors in oilfield operations primarily in the Eagle Ford Shale. EOG maintained and maintains

a yard/business location in the Eagle Ford Shale area of South Texas where Plaintiffs and the other similarly situated misclassified independent contractors sometimes work/worked.

59.     At all times relevant until late October 2015, Plaintiffs are/were paid on a day rate basis, and at times were paid per diem pay that is not/was not reasonably approximated to reimbursable expenses incurred by Plaintiffs behalf of EOG and/or EnerSafe. At all times relevant, Plaintiffs are not and were not paid on a salary or fee basis as those phrases are understood pursuant to the FLSA.

60.     EOG and/or EnerSafe labeled and treated Plaintiffs as so-called independent contractors. However, the reality, under both the FLSA and common-law standards applicable to ERISA, is that Plaintiffs were EOG and/or EnerSafe's employees at all material times.

61.     Here, EnerSafe provided EOG with workers, like Plaintiffs, who worked exclusively for EOG for long periods of time, routinely more than one year. EOG set the weekly work schedule for Plaintiffs, and Plaintiffs were expected and required to work for EOG full time, which in oilfield operation such as those performed by EOG in the Eagle Ford Shale are regularly workweeks that significantly exceed 40 hours per week.

62.     Plaintiffs were supervised by EOG managers on a daily basis and turned in form invoices created by EOG and showing the days worked for "EOG Resources" to their managers. This data was then provided by EOG to EnerSafe which resulted in EnerSafe issuing Plaintiffs paychecks. EnerSafe also issued Plaintiffs 1099s on an annual basis showing annual remuneration, some of which was the day rate pay, for Plaintiffs.

63.      Plaintiffs also provided their EOG managers with "daily activity sheets" bearing EOG's logo showing daily work activity, locations worked, and some of their hours worked.

64.     EOG also required Plaintiffs to participate in EOG sponsored training on things such as first aid and job duties, and tracked Plaintiffs' completion of that training on spreadsheets bearing EOG's logo.

65.     EOG provided Plaintiffs with the following supplies and equipment in connection with performing their work for EOG: hardhats, safety glasses, personal H2S and 4Gas monitors, self-contained breathing apparatuses (SCBA), cell phones, computers/laptops, hand tools, GPS, office space and office supplies, EOG e-mail account bearing an EOG domain name, EOG job duty and safety training, compressors, storage space to store equipment and other items needed by Plaintiffs to perform their full-time work for EOG. Much of the equipment provided Plaintiffs contained EOG's logo, such as hardhats. EnerSafe provided liability insurance coverage for the work performed by Plaintiffs for EOG which would provide liability insurance for damages caused in whole or in part by Plaintiffs while working for EOG.

66.     Plaintiffs were instructed in the manner in which to do their jobs by EOG managers.

67.     Plaintiffs were not permitted and did not hire employees to assist them with their work for EOG.

68.     Plaintiffs did not exercise sufficient, if any, control over a meaningful part of the business so as to be a separate economic entity from EOG. Plaintiffs were simply a part of EOG's workforce performing job duties and work that were integral parts of EOG's business operations.

69.     Similarly, Plaintiffs did not exercise sufficient, if any, control over a meaningful part of the business so as to be a separate economic entity from EnerSafe. Plaintiffs were simply

the workers EnerSafe paid relative to work performed by Plaintiffs for EOG in a manner similar to a staffing agency.

70.    Plaintiffs provided no material investment in Defendants' respective business operations, and each Defendant's investment in its business operations exceeds the investments, if any, of each Plaintiff in connection with their work for Defendants.

71.    Plaintiffs worked exclusively for EOG during the three year period preceding the filing of this lawsuit. During that time period, Plaintiffs were paid by TCSafety, Inc. until approximately January 2014, and were paid by EnerSafe, Inc. for work performed exclusively for EOG during time periods thereafter.

72.    At all times relevant, Plaintiffs were economically dependent on EOG and/or EnerSafe. For example, although EnerSafe issued the paychecks and 1099s to Plaintiffs, EOG routinely and regularly required Plaintiffs to perform the work which resulted in those paychecks and 1099s. The work demand from EOG prevented Plaintiffs from meaningful opportunity for earned income from a source other than EOG through paychecks issued by EnerSafe. Plaintiffs worked exclusively for EOG during the three year period preceding the filing of this lawsuit.

73.    Plaintiffs were simply paid a day rate, and at times, a per diem by EnerSafe for the work they performed for EOG. The more days Plaintiffs worked, the more money they made. Plaintiffs did not and could not hire employees of their own while working for Defendants. Similarly, Plaintiffs did not and could not subcontract the work assigned to them by EOG. Plaintiffs had no opportunity for loss. Instead, there was only opportunity for earned income based upon days worked for EOG that were paid by EnerSafe.

74.    All major components open to initiative--advertising, pricing, and business decision making were controlled by Defendants.

75.     Defendants did not make and keep a record of all of the data required by 29 C.F.R. § 516.2(a) in connection with the work performed by Plaintiffs for EOG and/or EnerSafe.

76.     Plaintiffs routinely worked in excess of 40 hours in a workweek for EOG and/or EnerSafe. When Plaintiffs worked in excess of 40 hours in a workweek when paid a day rate, they were not paid corresponding overtime premium compensation as required by the FLSA.

77.     During the time period relevant to Plaintiffs' FLSA causes of action, Defendants had many other workers performing work and being paid in similar fashion to Plaintiffs who were misclassified as independent contractors. Like Plaintiffs, those workers were paid on a day rate basis, and at times, per diem pay that was not related to business expenses incurred by those workers for EOG and/or EnerSafe. Like Plaintiffs, those workers were issued pay checks and 1099s by EnerSafe for work performed exclusively for EOG. Like Plaintiffs, those workers were supervised by EOG managers, worked exclusively for EOG at the direction of EOG, were provided with all material supplies and equipment to do their jobs by EOG, were provided with general liability insurance by EnerSafe for work they performed for EOG in the event their work caused damages to EOG or a third party. Like Plaintiffs, those workers worked for long periods of time, routinely in excess of one year, exclusively for EOG and/or EnerSafe, and had no control over their opportunity for profit or loss. Like Plaintiffs, those workers regularly worked in excess of 40 hours in a workweek, but, when paid on a day rate basis, were not paid time and one-half their respective regular rates of pay by EOG and/or EnerSafe for all hours worked over 40 in each and every such workweek during the relevant time period.

78.     On or about March 19, 2013, a co-worker of Plaintiffs named Gilbert Bazan ("Bazan") was seriously injured in a vehicle collision in the course and scope of his work for EOG in Texas. Like Plaintiffs, he worked exclusively for EOG, but was paid with paychecks

issued by EnerSafe in addition to being issued 1099s and otherwise being treated as an independent contractor. EOG manager David Watson issued instructions that Bazan should not claim or apply for benefits. As a result, many of the misclassified independent contractors made the subject matter of this lawsuit banded together to raise and donate money to Bazan since EOG would not provide benefits, including medical and disability, and Bazan, as so-called independent contractor, could not draw worker's compensation or unemployment benefits.

79.     Recently, in approximately October 2015, Plaintiffs and other similarly situated misclassified independent contractors of EOG and/or EnerSafe were informed that their pay rates were being changed from a day rate to an hourly rate and that they would start receiving overtime pay. Around this same time, Plaintiffs learned that EOG had a retirement benefits plan available to "all employees," a health and disability plans for "employees," and other benefits for "employees." However, Plaintiffs and the other similarly situated misclassified independent contractors did not receive/participate in those benefits. Given the experience of Bazan, Plaintiffs realize that, as misclassified independent contractors, application for those benefits at this time is futile absent judicial intervention. Plaintiffs and the other similarly situated misclassified independent contractors are entitled/eligible for all such ERISA covered benefits, and are covered beneficiaries, as they are common law employees not excluded by those ERISA plans.

80.     Plaintiffs are aware that EnerSafe treats some of its workers as employees and provides them with W-2s, and makes FICA withholding from their paychecks. On information and belief, those EnerSafe workers classified as "employees" also receive benefits, such as health, retirement and disability, that are not provided to so-called independent contractors like Plaintiffs and the other misclassified independent contractors. On information and belief, Plaintiffs and the other similarly situated misclassified independent contractors of EnerSafe are

entitled/eligible for all such ERISA covered benefits, and are covered beneficiaries, as they are common law employees not excluded by those ERISA plans.

## IV.    CONTROLLING LEGAL RULES

### A.    FLSA

81.    "Employ" includes to suffer or permit work. 29 U.S.C. § 203(g).

82.    The FLSA generally requires that an employer employing an employee for a workweek exceeding 40 hours must compensate the employee for hours worked over 40 "at a rate not less than one and one-half times the regular rate of pay." 29 U.S.C. § 207(a)(1). The "regular rate" includes "all remuneration for employment paid to, or on behalf of, the employee." 29 U.S.C. § 207(e).

83.    Failing to pay the required overtime premium for hours worked over 40 in a workweek is a violation of the FLSA. 29 U.S.C. § 216.

84.    Whether an individual is an employee, who is covered by the FLSA's provisions, as opposed to an independent contractor, who is not covered by the FLSA, is determined by the economic realities test. *Hopkins,* 545 F.3d at 343. The purpose of the economic realities test is to determine whether "the worker is economically dependent upon the alleged employer or is instead in business for himself." *Id.*

85.    District Courts within the Fifth Circuit consider the following five factors in assessing the economic reality of the working relationship: (1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and the alleged employer; (3) the degree to which the worker's opportunity for profit or loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship. *Id.* at 343 (*citing Herman v. Express Sixty-Minutes Delivery*

*Serv., Inc.,* 161 F.3d 299, 303 (5th Cir. 1998). The Fifth Circuit further noted that: "[n]o single factor is determinative. Rather, each factor is a tool used to gauge the *economic dependence* of the alleged employee, and each must be applied with this ultimate concept in mind." *Id.* (*citing Herman*, 161 F.3d at 303 and *Brock v. Mr. W Fireworks, Inc.,* 814 F.2d 1042, 1043-44 (5th Cir. 1987)).

86.     The FLSA recognizes the doctrine of joint employers. "Where an employee performs work that simultaneously benefits more than one employer, the concept of 'joint employment' imposes individual and joint FLSA liability on all employers." *Parker v. ABC Debt Relief, Ltd. Co.*, Civil Action No. 3:10-cv-1332-P, 2013 U.S. Dist. LEXIS 12859, at *13 - 20 (N.D. Tex. Jan. 28, 2013) (Solis, J.) (citing *Wirtz v. Lone Star Steel Co.*, 405 F.2d 668, 669-70 (5th Cir. 1968).

87.     "[I]t is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them. The mere promulgation of a rule against such work is not enough. Management has the power to enforce the rule and must make every effort to do so." 29 C.F.R. § 785.13; *accord Newton v. City of Henderson*, 47 F.3d 746, 748 (5th Cir. 1995) (same).

88.     Federal law requires employers to make and keep accurate and detailed payroll data for non-exempt employees. 29 U.S.C. § 211(c); 29 C.F.R. § 516.2. Amongst other things, the regulations require employers to make and keep payroll records showing data such as the employee's name, social security number, occupation, time of day and day of week which the workweek begins, regular hourly rate of pay for any week in which overtime pay is due, hours worked each workday and total hours worked each workweek, total daily or weekly straight time earnings, total premium pay for overtime hours, total wages paid each pay period and date of

payment and pay period covered by the payment, and records of remedial payments. 29 C.F.R. § 516.2(a)&(b). Employers are required to maintain the foregoing data for a minimum of three years. 29 C.F.R. § 516.5.

89.     The FLSA defines the "regular rate" as including "all remuneration for employment paid to, or on behalf of, the employee … ." 29 U.S.C. § 207(e).

90.     With a few limited exceptions, all remuneration given to an employee must be included in the employee's regular rate calculation. 29 U.S.C. § 207(e); 29 C.F.R. § 778.108; *accord Allen v. Board of Pub. Educ. For Bibb Cty.*, 495 F. 3d 1306, 1311 (11th Cir. 2007); *see also Johnson v. Big Lots Stores, Inc.*, 604 F. Supp. 2d 903, 927 (E.D. La. 2009).

91.     Bona fide per diem payments which reflect "reasonable payments for traveling expenses, or other expenses incurred by an employee in furtherance of his employer's interests and properly reimbursable by the employer" may be excluded from the regular rate of pay. 29 C.F.R. § 778.216. "[O]nly the actual or reasonably approximate amount of the expense is excludable from the regular rate. If the amount paid as 'reimbursement' is disproportionately large, the excess amount will be included in the regular rate." 29 C.F.R. § 778.217(c).

92.     "The expenses for which reimbursement is made must in order to merit exclusion from the regular rate …, be expenses incurred by the employee on the employer's behalf or for his benefit or convenience. If the employer reimburses the employee for expenses normally incurred by the employee for his own benefit, he is, of course, increasing the employee's regular rate thereby. An employee normally incurs expenses in traveling to and from work, buying lunch, paying rent, and the like. If the employer reimburses him for these normal everyday expenses, the payment is not excluded from the regular rate as 'reimbursement for expenses.' Whether the employer 'reimburses' the employee for such expenses or furnishes the facilities

*PLAINTIFFS' COMPLAINT FOR DAMAGES – PAGE 19*

(such as free lunches or free housing), the amount paid to the employee (or the reasonable cost to the employer or fair value where facilities are furnished) enters into the regular rate of pay… ." 29 C.F.R. § 778.217(d).

93.    Where the amount designated by the employer as a per diem allowance is not "reasonably approximated [to the employee's] reimbursable expenses," that per diem payment must be factored into the employee's regular rate of pay. *Gagnon v. United Technisource, Inc.*, 607 F.3d 1035, 1041 (5th Cir. 2010).

**B.    ERISA**

94.    Amongst its other findings in enacting ERISA, the Congress found that "many employees with long years of employment are losing anticipated retirement benefits," that employee benefit plans "have become an important factor affecting the stability of employment and the successful development of industrial relations," and that ERISA was necessary to "assur[e] the equitable character of such plans and their financial soundness." 29 U.S.C. § 1001.

95.    Certain benefit plans provided by employers to employees are covered by/subject to ERISA. *See Vizcaino v. Microsoft Corp.*, 120 F.3d 1006, 1013 (9th Cir. 1997) (citing 29 U.S.C. § 1002).

96.    "The term 'employee benefit plan' or 'plan' means an employee welfare benefit plan or an employee pension benefit plan or a plan which is both an employee welfare benefit plan and an employee pension benefit plan. 29 U.S.C. § 1002(3).

97.    "The term 'beneficiary' means a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8).

98.     Workers misclassified as independent contractors have a right of action to enforce the terms of a benefit plan that is covered by/subject to ERISA. *Darden,* 503 U.S. at 322-28; *Vizcaino*, 120 F.3d at 1012 (citing *Daughtrey v. Honeywell, Inc.*, 3 F.3d 1488 (11th Cir.1993)).

## V.     PLAINTIFFS' CLAIMS

### A.     FLSA

99.     Plaintiffs incorporate the preceding paragraphs by reference as if set forth fully in this section.

100.    This action is authorized and instituted pursuant to the FLSA. 29 U.S.C. §§ 201, *et seq.*

101.    All conditions precedent to this suit, if any, have been fulfilled.

102.    At all material times, Plaintiffs have been employees of EOG and/or EnerSafe pursuant to the FLSA. 29 U.S.C. § 203(e); *Wirtz*, 405 F.2d at 669-70. Although Defendants labeled/treated Plaintiffs as a so-called independent contractors, the economic reality is that Plaintiffs were employees EOG and/or EnerSafe. Additionally, EOG and EnerSafe are/were joint employers of Plaintiffs.

103.    At all material times, EOG has been an eligible and covered employer pursuant to the FLSA. 29 U.S.C. § 203(d).

104.    At all material times, EnerSafe has been an eligible and covered employer pursuant to the FLSA. 29 U.S.C. § 203(d).

105.    Plaintiffs routinely worked in excess of 40 hours per seven-day workweek for Defendants in the time period relevant to this lawsuit.

106.    At all material times, Plaintiffs are and were entitled to overtime compensation from Defendants at one and one-half times their respective regular rates of pay. 29 U.S.C. § 207(a)(1).

107.    Defendants failed to pay Plaintiffs overtime compensation at one and one-half times their respective regular rates of pay for all hours worked over 40 in each and every seven-day workweek during the time period relevant to this lawsuit preceding the date that Plaintiffs were converted to hourly pay in approximately late October 2015.

108.    Defendants did not maintain an accurate number of the daily and weekly hours worked by Plaintiffs during the relevant time period of this lawsuit. 29 C.F.R. § 516.2.

109.    Defendants' violations of the FLSA are and were willful within the meaning of 29 U.S.C. § 255(a). *See Singer v. City of Waco*, 324 F.3d 813, 821-22 (5th Cir. 2003) (upholding a jury finding of willfulness). Plaintiffs specifically plead recovery for the time period of three years preceding the date this lawsuit was filed and forward for their FLSA claims.

110.    Plaintiffs seeks all damages available for EOG's and/or EnerSafe's violations of the FLSA.

**B.    ERISA**

111.    Plaintiffs incorporate the preceding paragraphs by reference as if set forth fully in this section.

112.    This action is authorized and instituted pursuant to ERISA. 29 U.S.C. § 1132.

113.    All conditions precedent to this suit, if any, have been fulfilled.

114.    At all material times, Plaintiffs, despite being labeled as an independent contractors, are/were employees of EOG and/or EnerSafe pursuant to the common-law employment test utilized in connection with ERISA cases wherein a worker alleges he or she was misclassified as an independent contractor and denied employee benefits covered by/subject to ERISA. 29 U.S.C. § 1002(6); *Nationwide*, 503 U.S. at 323; *Landry*, 91 F. App'x at 952. Similarly, EOG and/or EnerSafe had and continue to have numerous other workers like Plaintiffs

who, despite being employees under the aforementioned ERISA related common-law test, are and/or were mislabeled as independent contractors by EOG and/or EnerSafe.

115.    On information and belief, Plaintiffs and the other misclassified independent contractors of EOG and/or EnerSafe are and/or were entitled to employee benefits subject to/covered by ERISA pursuant to EOG's and/or EnerSafe's definition of eligibility in their respective and applicable ERISA covered plan(s).

116.    Plaintiffs and the putative class members are and/or were beneficiaries under EOG's and/or EnerSafe's employment benefit plan(s). 29 U.S.C. § 1002(3) & (8).

117.    At all material times, EOG is and was an eligible and covered employer pursuant to ERISA. 29 U.S.C. § 1002(5).

118.    At all material times, EOG's employee benefit plan(s), including those identified above, are and were covered by/subject to ERISA. 29 U.S.C. § 1003.

119.    At all material times, EOG's employee benefit plan(s), including those identified above, are and were covered by/subject to ERISA. 29 U.S.C. § 1003.

120.    At all material times, Plaintiffs and workers misclassified as independent contractors like Plaintiffs, were not provided with the benefits subject to/covered by ERISA which EOG provided other workers it labeled as "employees."

121.    At all material times, EnerSafe is and was an eligible and covered employer pursuant to ERISA. 29 U.S.C. § 1002(5).

122.    At all material times, EnerSafe's employee benefit plan(s), including those identified above, are and were covered by/subject to ERISA. 29 U.S.C. § 1003.

123.    At all material times, EnerSafe's employee benefit plan(s), including those identified above, are and were covered by/subject to ERISA. 29 U.S.C. § 1003.

124.    At all material times, and on information and belief, Plaintiffs and workers misclassified as independent contractors like Plaintiffs, were not provided with the benefits subject to/covered by ERISA which EnerSafe provided other workers it labeled as "employees."

125.    EOG and/or EnerSafe did not timely and accurately disclose its ERISA covered employee benefit plan(s) to Plaintiffs and workers like Plaintiffs who are and/or were misclassified as independent contractors.

126.    Plaintiffs and the putative class members seek all damages available for EOG's and/or EnerSafe's failure to provide them with all employee benefit plans covered by/subject to ERISA that were provided to workers which EOG and/or EnerSafe labeled as "employees" or to which Plaintiffs and the putative class members are otherwise entitled.

## VI.    COLLECTIVE AND CLASS ACTION ALLEGATIONS

### A.    FLSA COLLECTIVE ACTION

127.    Plaintiffs incorporates the preceding paragraphs by reference as if set forth fully in this section.

128.    The FLSA putative collective action members are defined as all current and/or former misclassified independent contractors similarly situated to Plaintiffs who, during the relevant time period: (a) work/worked exclusively for EOG in connection with EOG's South Texas/Eagle Ford Shale Operations, but are/were issued paychecks and 1099s from EnerSafe and/or its predecessor; (b) are/were paid on a day rate basis; (c) are/were, at times, paid a per diem in addition to the day rate; (d) had/have job duties/titles of safety technicians and/or safety advisors; (e) work/worked more than 40 hours in any workweek; and (f) are/were not paid time and one-half their regular rate of pay for all hours worked over 40 in each such workweek by EOG and/or EnerSafe.

129.   The FLSA collective action class does not include workers paid by EnerSafe pursuant to W-2s.

130.   EOG and EnerSafe are joint employers of the putative collective action members.

131.   Where, as here, the employer's actions or policies were effectuated on a companywide basis, notice may be sent to all similarly situated persons on a companywide basis. *See Ryan v. Staff Care, Inc.*, 497 F. Supp. 2d 820, 825 (N.D. Tex. 2007) (certifying nationwide collective action in FLSA case); *see also*, *Jones v. SuperMedia Inc.,* 281 F.R.D. 282, 290 (N.D. Tex. 2012) (same).

132.   All of the putative collective action members are similarly situated to Plaintiffs, and to one another, within the meaning of Section 216(b) of the FLSA.

133.   Plaintiffs reserve the right to establish sub-classes and/or modify class notice language as appropriate in any collective action certification motion or other proceeding.

134.   Plaintiffs further reserve the right to amend the definition of the putative class, or sub classes therein, if discovery and further investigation reveal that the putative class should be expanded or otherwise modified.

### B.   <u>ERISA CLASS ACTION</u>

135.   Plaintiffs incorporate the preceding paragraphs by reference as if set forth fully in this section.

136.   Plaintiffs brings this ERISA cause of action as a class action under Federal Rule of Civil Procedure 23(a), (b)(1) and (3).

137.   Plaintiffs bring this action on behalf of themselves and all other similarly situated workers to Plaintiffs who are/were misclassified as independent contractors by EOG and/or EnerSafe under the controlling legal standards, are/were beneficiaries under EOG's and/or

EnerSafe's ERISA covered employee benefit plan(s), and are not/were not provided with the benefits of EOG's and/or EnerSafe's ERISA covered employee benefits plan(s).

138.     Plaintiffs seek to represent a class initially defined as: "All of EOG's and/or EnerSafe's workers misclassified as independent contractors that are and/or were beneficiaries under EOG's and/or EnerSafe's ERISA covered employee benefits plan(s) who are not and/or were not provided with the benefits of EOG's and/or EnerSafe's ERISA covered employee benefits plan(s)." Plaintiffs request the opportunity to expand, narrow or modify the class definition, including sub-classes, pursuant to a motion for class certification and/or amended complaint.

139.     Plaintiffs' claims satisfy the numerosity, commonality, typicality, adequacy and superiority requirements of a class action. On information and belief, there over 100 other workers who are and/or were misclassified as independent contractors by EOG and/or EnerSafe in substantially similar fashion to Plaintiffs who are and/or were beneficiaries under EOG's and/or EnerSafe's ERISA covered employee benefits plan(s) and who are not and/or were not provided with the benefits of EOG's and/or EnerSafe's ERISA covered employee benefits plan(s).

140.     On information and belief, the class members exceed 100 in number, and joinder is therefore impracticable. The precise number of class members and their addresses are readily determinable from EOG's and/or EnerSafe's records.

141.     There are common questions of fact and law as to the class that predominate over any questions affecting only individual class members. The questions of law and fact common to the class arising from EOG's and/or EnerSafe's actions/omissions include, but are not limited to, the following:

a. Whether Plaintiffs and the class members are and/or were employees of EOG and/or EnerSafe in connection with EOG's and/or EnerSafe's ERISA covered benefit plan(s);

b. Whether Plaintiffs and the class members are and./or were beneficiaries of EOG's and/or EnerSafe's ERISA covered employee benefit plan(s); and

c. The appropriate method to calculate damages owed Plaintiffs and the class members.

142.     The questions above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness and equity, to other available methods for the fair and efficient adjudication of the ERISA claims.

143.     A class action is the superior method for the fair and efficient adjudication of this controversy. Defendants have acted or refused to act on grounds generally applicable to the class. The presentation of separate actions by individual class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendants, and/or substantially impair or impede the ability of class members to protect their interests.

144.     Plaintiffs are affected misclassified independent contractors of EOG and/or EnerSafe who, despite being beneficiaries of one or both of Defendant's ERISA covered employee benefit plan(s), were not provided with all benefits allowed/covered by each such plan. Plaintiffs are, therefore, members of the class. Plaintiffs are committed to pursuing this action and have retained counsel with extensive experience in prosecuting complex wage, employment, and class action litigation. Accordingly, Plaintiffs are adequate representatives of the class and have the same interests as all of its members. Further, Plaintiffs' claims are typical of the claims of all members of the class, and Plaintiffs will fairly and adequately protect the interests of the

absent members of the class. Plaintiffs and their counsel do not have claims or interests that are adverse to the class members.

145.    Plaintiffs reserve the right to establish sub-classes and/or modify class notice language as appropriate in any class action certification motion or other proceeding.

146.    Plaintiffs further reserve the right to amend the definition of the putative class, or sub classes therein, if discovery and further investigation reveal that the putative class should be expanded or otherwise modified.

## VII.   JURY DEMAND

147.    Plaintiffs demand a jury trial.

## VIII.    DAMAGES AND PRAYER

148.    Plaintiffs ask that the Court issue a summons for Defendants to appear and answer, and that Plaintiffs be awarded a judgment against EOG and/or EnerSafe for the following:

a.    Actual damages in the amount of unpaid overtime wages;

b.    Liquidated damages;

c.    Certification of Plaintiffs' FLSA causes of action as a collective action with the requirement of notice of this lawsuit being provided to the putative collective action members;

d.    Benefits and/or value of benefits covered by/subject to ERISA which were not paid to/provided to Plaintiffs and the putative class members by EOG and/or EnerSafe in addition to all other available damages for EOG's and/or EnerSafe's failure to provide those benefits and/or inform Plaintiffs and the putative class members of those benefits;

e. Certification of Plaintiffs' ERISA causes of action as a Rule 23 class action naming Plaintiffs as the class representatives and the undersigned as class counsel;

f. Post-judgment interest on the FLSA claims;

g. Pre-judgment and post-judgment interest on the ERISA claims;

h. Costs;

i. Reasonable attorney's/attorneys' fees; and

j. All other relief to which Plaintiffs are entitled.

Respectfully submitted,


By: s/ Allen Vaught
Allen R. Vaught
TX Bar No. 24004966
MS Bar No. 101695
avaught@baronbudd.com
Baron & Budd, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, Texas 75219
(214) 521-3605 – Telephone
(214) 520-1181 – Facsimile

ATTORNEYS FOR PLAINTIFFS